IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LETICIA S.,

          Plaintiff,

     v.                    Civil Action No.
                               1:18-CV-0713 (DEP)

COMMISSIONER OF THE SOCIAL
 SECURITY ADMINISTRATION,

          Defendant.

_____

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF

DENNIS KENNY LAW OFFICE     JOSEPHINE GOTTESMAN, ESQ.
288 North Plank Road
Newburgh, NY 12550

FOR DEFENDANT

HON. GRANT C. JAQUITH       LUCY WEILBRENNER, ESQ.
United States Attorney        Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on September 19, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is GRANTED.

2)      The Commissioner's determination that the plaintiff was not

---

[1]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:     September 25, 2019
           Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
LETICIA S.,

                        Plaintiff,

vs.                              1:18-CV-713

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on September 19, 2019, at the

James Hanley Federal Building, 100 South Clinton

Street, Syracuse, New York, the HONORABLE DAVID E.

PEEBLES, United States Magistrate Judge, Presiding.


                A P P E A R A N C E S

                  (By Telephone)

For Plaintiff:       DENNIS KENNY LAW
                     Attorneys at Law
                     288 North Plank Road
                     Newburgh, New York  12550
                       BY:  JOSEPHINE GOTTESMAN, ESQ.

For Defendant:       SOCIAL SECURITY ADMINISTRATION
                     Office of General Counsel
                     15 Sudbury Street, Suite 625
                     Boston, Massachusetts  02203
                       BY:  LUCY WEILBRENNER, ESQ.

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1    (In Chambers, Counsel present by telephone.)

2    THE COURT:  I have before me a request for judicial

3    review of an adverse determination by the Commissioner of

4    Social Security pursuant to 42 United States Code Sections

5    405(g) and 1383(c)(3).

6    The background is as follows:  Plaintiff was born

7    in November of 1970, she is 48 years of age, was 46 years old

8    at the time of the hearing in this matter and 44 years of age

9    at the time of the alleged onset of her disability in

10   February of 2015.  She stands five-foot-two or two-and-a-half

11   inches in height and at time of the hearing testified that

12   she weighed 189 pounds.  She is right-handed.  Plaintiff has

13   a high school diploma and went to junior college for one and

14   one half years.  Plaintiff lives with her daughter, age 15,

15   and a son, age 13.  She has two other children that are not

16   living with her.  They live together in an apartment.

17   Plaintiff has a driver's license and drives, although she

18   testified that she suffers from anxiety when driving.

19   Plaintiff last worked in 2011.  She was a day care

20   teacher and an infant day care teacher from 2001 to 2009.

21   There is a suggestion at page 281 of the administrative

22   transcript that she was fired from that position.  She was

23   also an adult residence counselor in 2011.

24   Physically, plaintiff suffers from several

25   ailments.  She underwent a gastric bypass surgery in

1  September of 2014.  She suffers from fibromyalgia, or chronic

2  pain, carpal tunnel syndrome, osteoarthritis of the knees,

3  asthma, obesity, bursitis in her hips, and migraine

4  headaches.  Her primary care provider is Dr. Olai Sam and she

5  is seen by a rheumatologist, Dr. Christopher Huyck.

6          Mentally, plaintiff suffers from major depressive

7  disorder and anxiety disorder.  She was hospitalized in 2001

8  for a suicide attempt.  She, in August of 2015, was admitted

9  to Four Winds of Saratoga where she was treated by

10  psychiatrist Dr. Adrian Morris.  She was assigned a Global

11  Assessment of Functioning or GAF of 15 on admission and 55 on

12  discharge.  She has undergone mental health treatment at

13  Pinnacle Behavioral Health through I believe a nurse

14  practitioner, and at Karner Psychological Associates where

15  she was seen eight times in 2015.

16          She has been prescribed many medications:  B12

17  supplement, Lyrica, trazodone, Tizanidine, nortriptyline,

18  oxycodone, gabapentin, omeprazole, Albuterol, Percocet,

19  Clonazepam, Risperdal, Neurontin, and Cymbalta.  She has also

20  had Botox and trigger point injections.

21          In terms of daily living, plaintiff is able to

22  groom and dress herself, although she requires help on

23  occasion, she cooks one to two times a week, she does laundry

24  with help from her daughter, washes dishes, sweeps but she

25  cannot mop or vacuum, watches television, she works on her

smart phone.  She reads the Bible and other books, she attends church three times per month, she shops with her children, and she drives her children to school.

Procedurally, plaintiff applied for Title II and Title XVI benefits under the Social Security Act on March 12, 2015, alleging an onset date of November 1, 2011.  That was later amended in 11E to February 5, 2015.  Plaintiff claims disability based on fibromyalgia, chronic fatigue, migraines, arthritis, bilateral hip issues, asthma, anxiety, and depression.

On December 19, 2016, a hearing was conducted by Administrative Law Judge David Neumann.  ALJ Neumann issued a decision that was unfavorable to the plaintiff on April 13, 2017.  That became a final determination of the agency on April 26, 2018 when the Social Security Administration Appeals Council denied plaintiff's request for review.

In that decision, ALJ Neumann applied the familiar five-step sequential test for determining disability.  He first noted that plaintiff's last date of insured status was December 31, 2016.

At step one he found plaintiff had not engaged in substantial gainful activity since February 5, 2015.

At step two, he concluded that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform work-related functions

including obesity, asthma, carpal tunnel syndrome,
osteoarthritis of the knees, bursitis of the hips, major
depressive disorder, and anxiety disorder.  At step two he
rejected both fibromyalgia as lacking in medical evidence to
support the diagnosis under SSR 12-2p; he also rejected
plaintiff's migraine headaches.

At step three ALJ Neumann concluded that
plaintiff's conditions did not meet or medically equal any of
the listed, presumptively disabling conditions, specifically
considering Listings 1.02, 3.03, 12.04, 12.06, and 12.15.

After surveying the evidence, ALJ Neumann concluded
that plaintiff retains the ability to perform sedentary work
with additional limitations, including but not limited to
standing and walking one hour in an eight-hour workday with
normal breaks and tolerating only occasional exposure to
coworkers, supervisors, and the public.

Applying that RFC at step four, ALJ Neumann
concluded that plaintiff is unable to perform her past
relevant work as a day care worker and mental retardation
aide.

At step five, ALJ Neumann initially concluded that
if plaintiff could perform a full range of sedentary work, a
finding of no disability would be required under Medical
Vocational Guideline Rule, or Grid Rules 201.28 -- no, 201.20
and 201.21.

1            After consulting with a vocational expert, and

2    posing hypotheticals to that expert that approximates the --

3    closely approximates the RFC finding, the ALJ concluded that

4    plaintiff is capable of performing work in the national

5    economy available as a switchboard/telephone operator, and

6    concluded, therefore, that plaintiff is not disabled at the

7    relevant times.

8            As you know, my task is limited and the standard of

9    review that I apply is extremely deferential.  I must

10   determine whether correct legal principles were applied and

11   whether the determination is supported by substantial

12   evidence, which is defined as such evidence as a reasonable

13   mind would find satisfactory or sufficient to support a

14   conclusion.

15           The backdrop against which I measure plaintiff's

16   claims in this case is that it is her burden through step

17   four, including at the RFC level, under *Poupore v. Astrue*, to

18   prove that she suffers from conditions that impose

19   limitations on her ability to perform basic work functions.

20   The relevant period of course in this case is February 5,

21   2015 to March -- April 13, 2017.  Many of the records that

22   are here before the court in the administrative transcript

23   predate February 5, 2015 and therefore the relevance has to

24   be carefully considered in that context.

25           The first argument that plaintiff raises is that at

step two, the administrative law judge should have concluded
that plaintiff's fibromyalgia was severe.  She has been
diagnosed by both Dr. Huyck and Dr. Prezio as suffering from
fibromyalgia.  The agency has proliferated SSR 12-2p which
provides criteria for determining whether the fibromyalgia
has been sufficiently established.  The ALJ rejected at
page 15 fibromyalgia based on the lack of the number --
sufficient number of tender points and the lack of evidence,
excluding other impairments, as the cause of plaintiff's
pain.  There is evidence in the record of trigger points in
four quadrants.  I won't go through them all, but 279, 285 to
287, 291, 391, 394 to 95, 415 clearly shows trigger points in
the lateral gluteus area.  421 is particularly helpful
because it shows 16 of 18 trigger points.  512, 607, 608
shows 16 of 18 trigger points, 624 to 625 is, shows several
trigger points.  Page 643 suggests that other causes for the
pain has been ruled out.  The evidence clearly is equivocal,
however, at 626, Dr. Huyck and Physician's Assistant Monson
on July 19, 2016 found no trigger points present, and
similarly on August 30, 2016, at page 635, no trigger points
present.  I think that an argument could be made that there
was error in not concluding at step two that plaintiff's
fibromyalgia was not severe.

   The other argument concerning step two relates to
plaintiff's migraines.  And here, the evidence again is

1   similarly equivocal as to whether the migraines are

2   unrelenting, refractory in nature, and what severity and what

3   frequency they come and whether they're controlled at all

4   through medication, including B12 supplements.  The -- I

5   think an argument also could be made perhaps, but less strong

6   than the fibromyalgia, that at step two migraine headaches

7   should have been considered severe.

8           As you know, however, an error at step two is

9   harmless if the analysis proceeds to step three and provided

10  that the conditions and the limitations associated with those

11  conditions are adequately addressed when formulating the RFC.

12  In this case, I believe that they were.  The administrative

13  law judge went through painstakingly the evidence, including

14  plaintiff's activities of daily living and medical records,

15  opinions, pages 20 to 25, and specifically considered

16  plaintiff's claims of migraine headaches and fibromyalgia.

17  The analysis, as you know, of reported symptomology is

18  governed by SSR 16-3p.  In this case, unusually so in my

19  experience, the administrative law judge exhaustively

20  described plaintiff's claims at 19 and 20, and then analyzed

21  those claims considering activities of daily living,

22  treatment records, medical opinions, including the two

23  consultative examinations that were performed.

24          I agree with plaintiff's counsel that activities of

25  daily living do not necessarily translate well into the

workplace, but under SSR 16-3p, activities of daily living are factors to be considered, in fact it's factor number one of the factors to consider in evaluating intensity, persistence, and limiting effects of an individual's symptoms.

I do note that Dr. Hartman did appear to restrict plaintiff to simple tasks. The ALJ addressed that and found that was not supported based on findings concerning plaintiff's cognitive functioning level and memory skills which were only mildly impaired.

The vocational expert testified that switchboard telephone operator was an SVP 2 position. He explained why it was downgraded from what the Dictionary of Occupational Titles originally provided which was an SVP 2 and a GED reasoning level of 3 -- I'm sorry, SVP of 3 and GED reasoning level of 3.

The mental health provisions of the RFC are supported by the normal mental health status exams over time of the plaintiff. I note that an RFC, it's well established, doesn't need to correspond precisely to any one medical opinion, the ALJ can craft and choose pieces, if supported by substantial evidence. I agree that -- I wouldn't call it cherry picking, but I think an ALJ has the right to accept or reject opinions, provided that the acceptance or rejection is supported by substantial evidence and well explained.

1          Dr. Prezio did use terms such as mild and moderate.

2     There are cases going both ways, but I think the better

3     reasoned cases say that the use of such terms doesn't negate

4     altogether the value of the opinion.  Here, there was a

5     robust record to give context to Dr. Prezio's use of those

6     terms, and I note that this -- in my experience, this RFC is

7     extremely restrictive, much more restrictive than even

8     sedentary work.

9          The argument that plaintiff makes that the ALJ

10    failed to consider two opinions of Dr. Huyck stating that

11    plaintiff cannot perform either sedentary work, that's from

12    page 627 to 635, July and August of 2016, those were not

13    function-by-function opinions, and they were essentially

14    irrelevant and meaningless.  They essentially concluded that

15    plaintiff was disabled and that of course is a matter

16    reserved to the Commissioner.

17         As to the argument about one hour per week of

18    standing and walking -- one hour, I'm sorry, per day, the ALJ

19    considered that.  That is actually part of the RFC that was

20    found at page 19 and in the hypothetical that was posed to

21    vocational expert at 52, 53, the vocational expert identified

22    a job with 58,000 positions available that would meet that

23    criteria so there was no error there.

24         So I -- and the last argument was limitation of

25    exposure to the public, supervisors, and coworkers.  That was

1   accounted for also in the RFC and in the hypothetical posed

2   at page 51.

3           So in sum, although another person looking at this

4   record might reach a contrary conclusion, that doesn't

5   undermine the result here.  I do find that the result was

6   supported by substantial evidence, correct legal principles

7   were applied, and I will therefore grant judgment on the

8   pleadings to the defendant.  Thank you both for excellent,

9   excellent presentations, I hope you have a good afternoon.

10  Bye-bye.

11          MS. GOTTESMAN:  Thank you, Judge.

12          MS. WEILBRENNER:  Thank you, goodbye.

13              (Proceedings Adjourned, 11:38 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

1

2

3

4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5    Official Realtime Court Reporter, in and for the

6    United States District Court for the Northern

7    District of New York, DO HEREBY CERTIFY that

8    pursuant to Section 753, Title 28, United States

9    Code, that the foregoing is a true and correct

10   transcript of the stenographically reported

11   proceedings held in the above-entitled matter and

12   that the transcript page format is in conformance

13   with the regulations of the Judicial Conference of

14   the United States.

15

16                      Dated this 20th day of September, 2019.

17

18

19                           /S/ JODI L. HIBBARD

20                           JODI L. HIBBARD, RPR, CRR, CSR
                             Official U.S. Court Reporter
21

22

23

24

25